**Theresa SANDOVAL, as mother and next friend of Jose Sandoval, a minor, Plaintiff–Appellant,**

v.

**NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORP. d/b/a Amtrak and Burlington Northern Santa Fe Railway, Defendants–Appellees.**

No. 01–1267.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 20, 2001.

Decided Oct. 23, 2001.

Before Hon. BAUER, Hon. MANION, Hon. TERENCE T. EVANS, Circuit Judges.

ORDER

On November 2, 1996, while walking across a railroad trestle owned by Burlington Northern, Jose Sandoval was struck by an Amtrak train and lost his leg. His mother, Theresa Sandoval, sued Burlington Northern and Amtrak on his behalf. The district court concluded that because Jose was a trespasser he could not succeed absent willful and wanton conduct by the defendants. Because Sandoval failed to present sufficient evidence of such conduct, the district court granted the defendants summary judgment. Sandoval appeals. We affirm.

I.

At about 6:00 on the evening of November 2, 1996, 15–year–old Jose Sandoval and four of his friends walked down an alley in their Chicago-area neighborhood and onto the railroad tracks located at 24th and Karlov. They turned right and began walking on the tracks until they reached a bridge located near the 2300 block of South Lawndale. The bridge was at least four blocks east and one block north of where they first entered the railroad right-of-way to walk along the tracks. As they began crossing the bridge, the boys saw a freight train approaching on one of the four sets of tracks which spanned the bridge. They immediately ran to a different set of tracks. Unfortunately, the slow-moving freight train blocked their view of a fast-moving Amtrak passenger train approaching on another set of the tracks. Two of the boys got out of the train's path, the third was brushed aside by the train, but Jose was struck and the train amputated his right leg.

Jose's mother, Theresa Sandoval, filed suit on his behalf against Burlington Northern, which owned the trestle and right-of-way, and against Amtrak, alleging negligence. Following discovery, the defendants moved for summary judgment, arguing that because Jose was a trespasser he could not recover for ordinary negligence, and that Jose failed to present facts sufficient to support a finding that they had acted willfully and wantonly. The district court agreed and granted the defen-

dants summary judgment. Sandoval appeals.

## II.

◼ Illinois law applies to this diversity tort action. Under Illinois law, to state a cause of action for negligence, a plaintiff must establish "the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Ward v. KMart Corp.,* 136 Ill.2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223, 226 (Ill.1990). The existence of a duty is a question of law to be decided by the court, and as to the duty owed by a landowner or occupier of land, the duty is determined by the status of the person on the property, i.e., a trespasser, licensee, or invitee. *Rodriguez v. Norfolk & Western Ry. Co.,* 228 Ill.App.3d 1024, 170 Ill.Dec. 708, 593 N.E.2d 597, 607 (Ill. App.Ct.1992). Jose was clearly a trespasser on the train tracks, and he does not contend otherwise. Therefore, the general rule is that the defendants only owed Jose the duty of refraining from wantonly or willfully injuring him. *Id.,* 170 Ill.Dec. 708, 593 N.E.2d at 607.

While Jose had argued to the district court that the defendants' conduct constituted wanton and willful · behavior, he abandons this theory on appeal. Instead, Jose contends—as he did below—that he falls under the "permissive use" exception to the general rule that a railroad company owes no duty to a trespasser, except to refrain from wantonly or willfully injuring him.

◼ "Under the permissive use exception, a landowner may owe a duty of care to trespassers, other than to refrain from willful and wanton conduct, when the landowner permits regular use of his land for travel." *Id.,* 170 Ill.Dec. 708, 593 N.E.2d at 608. This "exception requires that a landowner exercise 'ordinary care' towards trespassers if (1) the trespasser is a fre-

quent trespasser (2) in a limited area (3) where the landowner knows or should know of the trespasser's constant intrusion." *Reid v. Norfolk & Western Ry. Co.,* 157 F.3d 1106, 1111 (7th Cir.1998).

In granting the defendants summary judgment, the district court rejected Jose's reliance on the "permissive use" exception, concluding that because Jose admitted that he had never gone on the tracks before, he was not a "frequent trespasser," and that in any event, Jose's trespass over a five-block area was not a "limited area" as required under Illinois law. We review this determination *de novo,* affirming only if, viewing the facts in the light most favorable to Jose, there are no genuine issues of material fact and the defendants are entitled to judgment as a matter of law. *Reid,* 157 F.3d at 1110.

We agree with the district court and conclude that the facts presented, viewed in the light most favorable to Jose, preclude his reliance on the permissive use exception. First, as the district court noted, Jose admitted that he had never before trespassed on the railroad's tracks. Therefore, he himself is not a "frequent trespasser" as required by Illinois law. *See Reid,* 157 F.3d at 1111 (permissive use exception requires that the plaintiff, personally, be a frequent trespasser).

◼ Jose argues in response that a person may be a "permissive user" even if he, personally, has not previously trespassed on the property, so long as he is a member of a class of users who have routinely used the property. However, that does not appear to be Illinois law. In *Rodriguez,* the plaintiff attempted to rely on the permissive use exception in his suit against Norfolk Railway for injuries he sustained while trespassing on the defendants' tracks, even though he had never trespassed on the tracks before. The Illinois appellate court rejected the plaintiff's theory, explaining that "[p]revious use of the

path by other members of the public is immaterial to plaintiff's case because it cannot be relied on to establish that he was on the premises as a result of an implied invitation because the owner habitually permitted such entry." *Rodriguez,* 170 Ill.Dec. 708, 593 N.E.2d at 610 (internal citation omitted). This court has interpreted *Rodriguez* as requiring the plaintiff to establish that "*he* frequently trespassed on the track" to qualify under Illinois law as a "permissive user." *Reid,* 157 F.3d at 1111. Absent further guidance from Illinois courts, we decline to revisit our holding in *Reid.*

Even were we to accept Jose's position, he would still not qualify under the "permissive use" exception for two reasons. First, the evidence presented by Jose established that others trespassed on the tracks at 24th and Karlov. The evidence, read in the light most favorable to Jose, also indicated that children sometimes trespassed on the tracks by entering a hole in the fence at 23rd and Lawndale. However, neither location was the site of Jose's accident. Rather, Jose entered the tracks at 24th and Karlov and walked at least five blocks down the tracks, past the hole at 23rd and Lawndale and onto the railroad trestle. Jose failed to present any evidence that others regularly trespassed on the railroad trestle. Therefore, even if Jose himself did not need to qualify as a frequent trespasser, because he failed to present evidence that others frequently trespassed at the location where he was struck, he still does not qualify under the permissive use exception.

Secondly, even if Jose could establish that others frequently trespassed—and

frequently trespassed on the railroad trestle—the permissive use exception requires that his trespass be in a limited area, and the undisputed facts establish that the trespass was not in a limited area. Specifically, Jose admitted in his deposition that he and his friends entered the railroad tracks at 24th and Karlov, but instead of crossing over the path, they turned right and walked five blocks to the railroad bridge near the 2300 block of South Lawndale. Five blocks is not a limited area.[1] *Reid,* 157 F.3d at 1112 (one block is not a limited area under Illinois law for purposes of the permissive use exception). For this added reason, Jose cannot qualify under the permissive use exception.

■■■ Jose contends that even if he did not qualify under the permissive use exception, the defendants nonetheless owed him a duty of reasonable care under Illinois law because he was incapable due to his age and maturity of appreciating the risk involved. Jose correctly summarizes Illinois law: "As a general rule, a duty is imposed upon an owner or other person in possession and control of the premises to exercise due care to remedy a dangerous condition on the land or to otherwise protect children from injury resulting from it where ... the defective structure or dangerous condition was likely to injure children because they are incapable, because of age and maturity, of appreciating the risk involved...." *Benamon v. Soo Line Ry. Co.,* 294 Ill.App.3d 85, 228 Ill.Dec. 494, 689 N.E.2d 366, 372 (Ill.App.Ct.1997).

However, Jose's alternative theory cannot succeed because the undisputed facts demonstrate that not only was he *capable* of appreciating the risk involved, but that

---

1. Jose also argues that because there was a hole in the fence near 23rd and Lawndale where children would sometimes play and people would dump garbage, and because the railroad trestle was within one block of this opening, the trespass was over a limited area. But Jose did not enter the track at that location, and he did not merely cross over the tracks; rather, he continued past the entrance, past the path crossing the tracks, and up onto the railroad trestle.

he *actually* appreciated the risk involved. Initially, we note that it would be a rare case indeed in which a 15–year–old would be unable to appreciate the risk presented by trains, and in particular the risk of crossing a bridge on train tracks. In any event, as Jose's deposition testimony, excerpted below, makes clear, he actually knew that it was dangerous to go up on the railroad track:

Q: Did your mom ever teach you not to go up on the railroad tracks?

A: Yeah. Well, yes, she did.

Q: And what did she tell you about not going up there, why?

A: Because it's dangerous. Because it's dangerous.

B: When you went up on them, though, on November 2nd, 1996, did you know it was dangerous up there?

A: Yes, but when you're a kid, you don't believe nothing. You just don't believe it. You got to see it for yourself.

Q: But someone told you that, and you knew it, right?

A: Yeah.

Jose claims that even though he admitted that he knew it was dangerous to go up on the railroad tracks, there was a question of fact as to whether he appreciated the risk involved because he also stated in his deposition that, "when you're a kid, you don't believe nothing. You just don't believe it. You got to see it for yourself." But not believing that a risk will materialize is not the same thing as not appreciating a risk. Nor does it create a question of fact as to whether Jose appreciated the risk because he explicitly admitted that he knew it was dangerous to go up on the railroad tracks. Accordingly, Jose's alternative theory for recovery also fails.

### III.

Jose's injury is truly tragic, but he cannot hold Burlington Northern and Amtrak responsible because his injury resulted from his trespassing on a railroad trestle, and he failed to present any evidence that the defendants' conduct was willful or wanton. Nor has Jose presented facts sufficient to hold Burlington Northern and Amtrak to a higher standard of care under Illinois law under the permissive use exception because he, personally, was not a frequent trespasser, and in any event, his trespass was not in a limited area, but spanned five blocks. The evidence also establishes that Jose knew of the risk of going on the train tracks, as unequivocally demonstrated by his testimony that his mother warned him of the danger and that he actually knew it was dangerous to go onto the tracks. Accordingly, Jose cannot succeed in his negligence suit against Burlington Northern and Amtrak, and the defendants are entitled to summary judgment. We AFFIRM.